UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT BERGEY,

        Plaintiff,                         Case No. 2:15-cv-43

v.                                            Honorable Gordon J. Quist

LINDA TRIBLEY et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action against Defendants Penrose, Perttu, Russell, Barber, and MacLeod will be dismissed for failure to state a claim. The Court will order service of the complaint against Defendants Klingforth, Tribley, McGuire and Yon.

### Factual Allegations

Plaintiff Robert Lyle Bergey is a state prisoner presently incarcerated with the Michigan Department of Corrections (MDOC) at Carson City Correctional Facility, though the events about which he complains occurred while he was incarcerated at Ojibway Correctional

Facility (OCF). Most of the Defendants are MDOC employees located at OCF: Warden Linda Tribley, "Mailroom - GOA" Brenda Klingforth, "Mailroom - GOA" Jeannine MacLeod, Inspector Michael S. Yon, Assistant Resident Unit Supervisor (ARUS) Ronda McGuire, "A / HI" (Unknown) Penrose, and Resident Unit Manager (RUM) T. Perttu. Plaintiff also sues MDOC Grievance Section Manager Richard D. Russell and Ombudsman Keith Barber of the Office of Legislative Corrections Ombudsman. (Compl., docket #1, Page ID##2-3.)

According to the complaint, Plaintiff's "personal" outgoing mail has been opened and read by MDOC officials, including Warden Tribley and OCF mailroom staff. (*Id.* at Page ID#3.) Plaintiff became aware of what was happening in January 2013, when his grandmother informed him that all of his mail to her since December 2012 had been opened and then taped closed.

MDOC policies prohibit prisoners from sending mail that "is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner," including the following:

> 1. Mail violating federal or state law.
>
> 2. Mail violating postal regulations.
>
> 3. Mail containing physical contraband, which is defined as any property that a prisoner is not specifically authorized to possess or that is from an unauthorized source. This includes postage stamps, except that a prisoner may receive a single stamped self-addressed envelope from an attorney, a court, or a legitimate religious organization.
>
> 4. Mail containing a criminal plan or conspiracy.
>
> 5. Mail containing threats.
>
> 6. Mail addressed to anyone who has objected to receiving mail from the prisoner sending the mail. This only applies after the prisoner has been notified of the objection. A prisoner who continues to send mail to a person who has objected to receiving mail from that prisoner after receiving notice of the objection also may be subject to discipline in accordance with PD 03.03.105 "Prisoner Discipline".
>
> 7. Mail for the purpose of operating a business enterprise while within the facility.

(MDOC Policy Directive 05.03.118 ¶ D (Sept. 14, 2009), docket #1-1.) Plaintiff contends that OCF Operating Procedure 05.03.118 (effective April 1, 2013) provided that if a prison official had reasonable grounds to believe that a prisoner is sending mail in violation of the foregoing policy, the prisoner would be issued a notice of violation and a hearing would be conducted on the matter. If, after a hearing, it was determined that the mail violates the policy, then the mail could be opened and inspected.[1] Plaintiff asserts that he never received notice or a hearing before his mail was opened.

On February 21, 2013, Plaintiff attempted to send a letter to his grandparents which made "unflattering and derogatory" remarks about Warden Tribley and mailroom staffer Jeannine MacLeod. (Compl., Page ID#5.) The letter was opened and read by mailroom staff. The mail was turned over to Inspector Yon, who issued Plaintiff a misconduct ticket for insolence.[2] When Plaintiff sent kites to mailroom staff asking why his mail had been opened, they ignored him.

On September 5, 2013, Plaintiff received notice from mailroom staffer Brenda Klingforth that another of his letters was rejected because "[Plaintiff] is currently serving on CSC. The content of his outgoing mail may interfere with his rehabilitation; content contains sexual fantasizing." (Notice of Package Mail/Rejection, docket #1-1, Page ID#10.)[3] Plaintiff states that the letter contained a "fictional story" for his grandparents depicting "sex that was legal, consen[s]ual, and . . . between adults." (Compl., Page ID#5.) Plaintiff sent a kite to Defendant Klingforth complaining that his letter did not depict criminal behavior and that she did not have a basis for opening his mail. (*See* Ex. 3 to Compl., docket #1-1, Page ID#11.) ARUS McGuire

---

[1] Plaintiff contends that OCF Operating Procedure 05.03.118 was changed on March 15, 2014, so that it no longer requires notice and a hearing before a prisoner's mail is opened.

[2] According to a misconduct report attached to the complaint, Plaintiff waived his right to a hearing on the ticket and received a sanction of three days of loss of privileges. (Ex. 1 to Compl., docket #1-1, Page ID#9.)

[3] Plaintiff's MDOC profile indicates that he is serving sentences for two counts of criminal sexual conduct (CSC) in the fourth degree with a person between the ages of 13 and 16, one count of CSC in the third degree with a person between the ages of 13 and 15, and one count of assault with intent to commit sexual penetration. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=596779 (visited Apr. 30, 2015).

conducted a hearing on the issue and determined that the mail should be destroyed because it "may interfere with [Plaintiff's] rehabilitation" for his CSC offenses. (Ex. 4 to Compl., Administrative Hr'g Rep., docket #1-1, Page ID#12.) Plaintiff asserts that these findings are "prejudice and discrimative [sic]" towards him, because they are not based on any violation of policy. (Compl., Page ID#5.)

Plaintiff subsequently filed a grievance complaining that his mail was opened and read by mailroom staff without prior notice. Mailroom staffer Jeannine MacLeod met with Plaintiff and informed him that he is "on a Red Flag list not to send or receive mail [to or from] Jennifer Hiller," and that MDOC staff can open his mail as long as they have reasonable grounds to do so. (*Id.*) The grievance was denied.[4] Plaintiff appealed the denial of his grievance; Warden Tribley denied the appeal at Step II of the grievance process[5] and Grievance Section Manager Russell denied it at Step III. Plaintiff filed another grievance about Klingforth and Tribley's "discriminatory" reason for rejecting his outgoing mail, and ARUS McGuire's alleged prejudice against him. (*Id.*) The respondent, Defendant Penrose, denied the grievance as duplicative of a previous one. Defendants Russell and Barber subsequently affirmed the denial on appeal.

Plaintiff filed another grievance in December 2013 after he learned that another letter had been opened by prison officials before it was mailed. Defendant Perttu denied the grievance and Defendants Tribley and Russell upheld the denial on appeal. Plaintiff sought further relief from Ombudsman Barber, but he has not received a response.

---

[4] In the Step I Grievance Response, the reviewer noted that Plaintiff was added to the facility's "Red Flag list after Warden Tribley received a telephone call requesting a stop of mail to and from Jennifer Hiller, (15 years old)[.]" (Ex. 6 to Compl., docket #1-1, Page ID#14.)

[5] In her response, Warden Tribley noted that Plaintiff had been placed on a watch list due to his "contact with a victim," that "[v]arious complaints [had] been received regarding [his] unwanted mail," and that Plaintiff contacted a victim "through JPay accounts she set up using a false name[.]" (Ex. 7 to Compl., docket #1-1, Page ID#15.) According to the warden, inspection of Plaintiff's mail was warranted due to his "continued abuse of the system and violation of policy[.]" (*Id.*)

- 4 -

Based on the foregoing, Plaintiff claims that Defendants have improperly interfered with his personal letters to family and friends, in violation of the Constitution and MDOC policy. As relief, he seeks damages and an injunction requiring the MDOC to expunge his misconduct conviction and to change its policy regarding review of personal mail.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment

Plaintiff complains that Warden Tribley and mailroom staff (Defendants Klingforth and MacLeod) have opened and inspected his personal mail without grounds for doing so. Inmates have a First Amendment right to communicate with the outside world by sending and receiving mail. *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989); *Turner v. Safley,* 482 U.S. 78, 85 (1987). That right, however, is not absolute. A prisoner retains only those First Amendment freedoms which are "'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system[].'" *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citing *Pell,* 417 U.S. at 822-23; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Interference with a prisoner's outgoing mail is constitutional if it "'further[s] an important or substantial governmental interest unrelated to the suppression of expression,' and . . . [if it] extend[s] no further 'than is necessary or essential to the protection of the particular

governmental interest involved.'" *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991) (quoting *Martinez*, 416 U.S. at 413). Security concerns regarding outgoing mail include, but are not limited to, "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh*, 490 U.S. at 412. "It is thus well-settled that prison or jail personnel do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal mail." *Frey v. Raisanen*, No. 2:14-cv-10192, 2014 WL 545794, at *2 (E.D. Mich. Feb. 11, 2014) (citing *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (prison officials did not violate the First Amendment by reading inmate's outgoing mail to his family); *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999) (opening and inspecting an inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *Stow v. Grimaldi*, 993 F.2d 1002, 1004-05 (1st Cir. 1993) (state prison practice requiring that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate prisoner's constitutional rights); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir. 1991) ("[I]t is well established that prisons have sound reasons for reading the outgoing mail of their inmates."); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding prison regulations authorizing the inspection of incoming and outgoing nonlegal mail)); *see also Meadows v. Hopkins*, 713 F.2d 206 (6th Cir. 1983) (upholding a prison regulation which authorized the reading of all prisoners' general correspondence). Consequently, Plaintiff does not state a First Amendment claim against Defendants Tribley, MacLeod and Klingforth for opening and inspecting his personal mail.

In two instances, however, Defendants did more than merely open and inspect his mail. They either stopped him from sending it or punished him for writing it. One of his letters was rejected by Defendants Klingforth and Tribley because of its sexual content. ARUS McGuire held

a hearing on the issue and determined that the letter should be destroyed. In addition, Inspector Yon issued Plaintiff a misconduct ticket for writing a letter which contained unflattering and derogatory remarks about the warden. At this stage of the proceedings, the Court finds that Plaintiff has stated First Amendment claim against Defendants Klingforth, Tribley, McGuire and Yon for censoring his outgoing mail and punishing him for its content. *Cf. Martinez*, 416 U.S. at 415-16 (invalidating regulations which permitted officials to censor correspondence containing criticism, disrespectful comments, or derogatory remarks about prison officials); *Loggins v. Delo*, 999 F.2d 364, 367-68 (8th Cir. 1993) (finding a First Amendment violation where the prisoner was disciplined for using insulting language about prison officials in a letter to his brother).

### B. Due Process

Plaintiff contends that he is entitled to notice and a hearing before prison officials open his mail, and that failure to provide this procedure deprives him of due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff's claim fails because he does not have a protected property or liberty interest in sending mail without having it opened and inspected by prison officials.

As indicated *supra*, Plaintiff does not have a constitutional right to prevent prison officials from opening and inspecting his personal mail. Plaintiff alleges that there was a prison policy which required prison officials to provide notice before opening his mail; however, the presence of a policy does not, in itself, suffice to give rise to a protected liberty interest. In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court held that the State created a protected liberty interest in avoiding confinement in segregation because a state statute contained "explicitly mandatory language" that placed substantive limitations on the discretion of prison officials to place

prisoners in segregation. *Id.* at 472. Similarly, Plaintiff ostensibly argues that he has a liberty interest in sending personal mail without inspection because prison policy limited officers' discretion as to when mail could be opened, and required that a hearing be held to determine whether there were reasonable grounds for opening it. The Supreme Court overruled *Hewitt* in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), holding that a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87. Opening and inspecting Plaintiff's personal mail does not impose an atypical and significant hardship on him; thus, he cannot claim that he is entitled to due process for that conduct. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff arguably has a property interest in the mail that was destroyed, but he alleges that he received notice and a hearing before that occurred; thus, he received all the process to which he was entitled. *See Martinez*, 416 U.S. at 417-19 (requiring "minimal procedural safeguards" for censorship of outgoing mail, including notice of rejection of the mail, an opportunity to protest the rejection, and review by an official other than the one who originally rejected the mail). Consequently, Plaintiff does not state a due process claim.

### C. Prison Policy

Plaintiff also contends that Defendants violated prison policy, but a violation of prison policy or state law does not suffice to state a claim under § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*,

27 F.3d 1162, 1166 (6th Cir. 1994). Thus, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

### D. Supervisor Liability

Plaintiff's only allegations against Defendants Penrose, Perttu, Russell, and Barber are that they denied his grievances or failed to act in response to them. In addition, the only remaining allegations that might state a claim against Defendant MacLeod are that she denied his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to

allege that Defendants Penrose, Perttu, Russell, Barber, and MacLeod engaged in any active unconstitutional behavior. Accordingly, they will be dismissed for failure to state a claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action against Defendants Penrose, Perttu, Russell, Barber, and MacLeod will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will order service of the complaint against Defendants Klingforth, Tribley, McGuire, and Yon.

An order consistent with this Opinion will be entered.


Dated:  May 20, 2015                                  /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                     UNITED STATES DISTRICT JUDGE