UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT BERGEY #596779,

    Plaintiff,

v.                                                                                  Case No.  2:15-cv-43
                                                                                HON.  GORDON J. QUIST

LINDA TRIBLEY and BRENDA
KLINGFORTH,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert Bergey, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Linda Tribley and Brenda Klingforth.  Plaintiff's only remaining claim in this case is that his First Amendment rights were violated when Defendants rejected a letter on September 5, 2013.  Defendants have now moved for summary judgment based on Federal Rules of Civil Procedure 56(a).  (ECF No. 34.)  Plaintiff has responded.  (ECF No. 38.)  This matter is now ready for decision.

The allegations in this case arise from a letter that Plaintiff attempted to send from Ojibway Correctional Facility on September 5, 2013.  Prior to this date, the prison mailroom was screening Plaintiff's outgoing mail because the prison received several complaints that Plaintiff was contacting some of the victims involved in his CSC convictions.  (Tribley Aff. ¶ 2.)  Specifically, on October 5, 2012, the Kalkaska Parole Office received a complaint for "unwanted contact" from two individuals.  (Tribley Aff. Ex. 1.)  At a hearing, Plaintiff admitted to writing

letters to these individuals and agreed to cease communication. (Tribley Aff. Ex. 1.) On December 7, 2012, Defendant Tribley received a phone call from another victim's mother. (Tribley Aff. ¶ 5.) The mother stated that Plaintiff was contacting her minor daughter. (Tribley Aff. ¶ 5.) She expressed concern that Plaintiff was sending mail to his own family members, who would then send the mail to the minor victim. (Tribley Aff. ¶ 5.) At a hearing, Plaintiff was ordered not to contact this victim through phone calls, "J-Pays," and/or letters. (Tribley Aff. Ex. 2.)

On September 5, 2013, while working in the mailroom, Defendant Klingforth found Plaintiff's letter suspicious because it was originally addressed to himself, but then re-addressed to someone else. (Tribley Aff. ¶ 9.) Defendants state that prisoners occasionally address outgoing mail to themselves to hide the contents of the letter by making it appear that it was incoming mail that had already been scanned. (Tribley Aff. ¶ 9.) Although Plaintiff claims that the letter was never addressed to anyone else, Defendants attached a copy of the envelope to Defendant Tribley's Affidavit. (Tribley Aff. Ex. 4.)

After inspecting the letter, Defendant Klingforth filled out a Notice of Package/Mail Rejection form. PageID.10. According to the form, Defendant Klingforth rejected the letter because "[Plaintiff] is currently serving on CSC. The content of his outgoing mail may interfere with his rehabilitation: content contains sexual fantasizing." PageID.10. Defendant Klingforth also wrote on the form: "Outgoing mail rejected per Warden Tribley." PageID.10.

Plaintiff alleges that he was sending the letter to his grandmother. PageID.5. Plaintiff further alleges that the letter contained a chapter from the novel he was writing, and that the story "depicted sex that was legal, consentual [sic], and took place between adults." PageID.5, 10.

On September 11, 2013, ARUS McGuire conducted a hearing on the issue. PageID.12. In determining that the mail should be destroyed, McGuire stated: "Due to the sexual content, sexual fantasies and mention of his own daughters in the outgoing mail and his current and past CSC offenses, it has been determined that this mail may interfere with [Plaintiff's] rehabilitation." PageID.12.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen,*

*Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822 (1974)); *see Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citations omitted*).*

A prisoner's outgoing mail may be inspected and censored by prison guards if (1) the contested conduct "further[s] an important or substantial governmental interest unrelated to the suppression of expression;" and (2) "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." *Procunier v. Martinez,* 416 U.S. 396, 413 (1974) *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Martucci v. Johnson,* 944 F.2d 291, 295-96 (6th Cir. 1991) (finding the standard in *Martinez* applies to outgoing mail, and the standard in *Turner v. Safley,* 482 U.S. 78 (1987), applies to incoming mail).

In this case, Defendants identify rehabilitation and the protection of minor victims from re-victimization as the two governmental interests that were furthered by rejecting Plaintiff's September 5, 2013, letter. Both are valid governmental interests. *See Martinez*, 416

U.S. at 413 (finding order, security, and rehabilitation as "identifiable governmental interests"). Defendants rejected the letter because they believed that it was another attempt by Plaintiff to send a letter to a victim through his family members. Plaintiff argues that this could not have been the reason the letter was rejected because it was never explicitly written down on the Notice of Mail rejection form. However, this was obviously relevant to Defendants' conduct because Plaintiff's repeated unwanted contact with his victims was the reason his outgoing mail was being screened in the first place. In addition, Defendants determined that sending sexually explicit material could interfere with the rehabilitation of a prisoner who is convicted of several sex offenses. It is well-established that courts afford "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). In the opinion of the undersigned, Defendants' rejection of Plaintiff's September 5, 2013, letter furthered the governmental interests of rehabilitation and protection of minors from re-victimization.

Defendants also argue that rejecting Plaintiff's September 5, 2013, letter was "no greater than necessary" to further legitimate government interests because each piece of Plaintiff's mail was evaluated on a case-by-case basis. Defendants were not rejecting all mail that contained sexual explicit material. Instead, Defendants rejected one piece of mail that contained sexual explicit material, mentioned Plaintiff's daughters, and was suspiciously addressed to Plaintiff, but then re-addressed to a family member. In the opinion of the undersigned, Defendants' conduct was no more restrictive than necessary to further the governmental interests of rehabilitation and the protection of minors from re-victimization.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, Plaintiff cannot establish that his constitutional rights were violated. Therefore, Defendants are entitled to qualified immunity. Moreover, it unnecessary to determine if both Defendants had sufficient personal involvement to be liable.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is

recommended that Defendants' Motion for Summary Judgment (ECF No. 34) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     August 31, 2016              */s/ Timothy P. Greeley*
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE